```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
Of A Feather, LLC,                       :
                                         :
                          Plaintiff,     :      19cv9351 (DLC)
              -v-                        :
                                         :
Allegro Credit Services, LLC,            :
                                         :
                          Defendant.     :
                                         :
-----------------------------------------:
                                         :
Allegro Credit Services, LLC,            :
                                         :
                          Plaintiff,     :      20cv2622 (DLC)
              -v-                        :
                                         :
Of A Feather, LLC, Jared Stamell, and    :
Susan Stamell,                           :      OPINION AND ORDER
                                         :
                          Defendants.    :
                                         :
----------------------------------------X
```

APPEARANCES

For Of a Feather, LLC, Jared Stamell, and Susan Stamell:
Stamell & Schager, LLP
Jared B. Stamell
260 Madison Avenue, 16th Floor
New York, New York 10016

For Allegro Credit Services, LLC:
Bailey & Glasser LLP
Elliott McGraw
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007

DENISE COTE, District Judge:

  In these related cases, Of a Feather, LLC ("Feather")

alleges that Allegro Credit Services, LLC ("Allegro") misled

Feather during the course of a loan negotiation and ultimately refused to fund the loan.  Feather asserts claims for deceptive business practices under New York General Business Law ("GBL") § 349, negligent misrepresentation, fraud, and breach of contract.  In both cases, Allegro has moved to dismiss under Rule 12(b)(6), Fed. R. Civ. P.  Allegro's motions are granted, except as to Feather's claims for breach of contract.

## Background

I.  Procedural History

Case number 19cv9351 (the "Original Action") was removed from New York state court on October 9, 2019.  On October 17, Allegro moved to dismiss.  An Order of October 18 set a deadline for Feather to amend its complaint and warned that it would be unlikely to have a further opportunity to amend.  On October 24, Feather moved to remand the action to state court.  An Order of October 28 stayed briefing on Allegro's motion to dismiss until resolution of the motion to remand.  The motion to remand was denied on January 6, 2020.

An Order of January 7 set a deadline of January 24 for Feather to file an amended complaint and again warned that it was unlikely Feather would have a further opportunity to amend.  Feather was granted an extension of that deadline to January 27, on which date it filed a first amended complaint (the "FAC")

with the four claims against Allegro identified above.  On February 21, Allegro renewed its motion to dismiss.  That motion became fully submitted on April 17.

On March 27, 2020, Allegro filed its own action against Feather, case number 20cv2622 (the "Related Action").[1]  Feather filed its answer in the Related Action on May 10 and included counterclaims for (1) deceptive business practices under GBL § 349, (2) intentional or negligent misrepresentation of a material fact, and (3) breach of contract.  The Related Action Counterclaims ("RAC") thus differed from the FAC in that the RAC styled intentional or negligent misrepresentation as a single claim, while the FAC alleged separate claims for negligent misrepresentation and for fraud.  Feather also asserted these claims in the Related Action against Allegro's owner, Daniel L. Gordon, as a third-party defendant.

On May 29, Feather requested leave to replace the FAC with the RAC, characterizing the counterclaim pleading as "a more fulsome version" of the FAC.  Feather's request was denied by an Order of June 4.

---

[1] Also named as defendants are two of Feather's guarantors. Their inclusion does not affect the determination of the present motions, so "Feather" is occasionally used herein as a shorthand for all the Related Action defendants.

On June 15, Allegro moved to dismiss the RAC. An Order of June 16 indicated that Allegro's motion to dismiss in the Original Action would be addressed together with its motion to dismiss the counterclaims in the Related Action. The June 16 Order also indicated that the parties' arguments from the Original Action briefing would be considered in addressing the Related Action motion. The parties submitted supplemental briefing on the Related Action motion, which became fully submitted on June 26.

II. Factual Background

The following facts are drawn from the RAC unless otherwise noted, and are assumed to be true for the purpose of addressing these motions. Feather's allegations in the FAC are substantially similar to those in the RAC.

A. Negotiation of the Loan Commitment

Feather owns a farm in Massachusetts, which was mortgaged as collateral for a promissory note. In 2018, Feather's mortgagee (the "Mortgagee") offered to settle the debt at a substantial discount, so Feather sought to refinance the mortgage. During December 2018, Feather's financial consultant, Rennie Muzii, was negotiating a refinancing loan with a lender (the "Original Lender").

4

Muzii mentioned the transaction to Gordon during a telephone call.  As noted above, Gordon is owner of Allegro; he is also friends with Muzii.  Further, Gordon had been a client of the lawyer who was representing Feather in the refinancing and had met Feather's owner.  Due to these relationships, Feather preferred to have Allegro fund the refinancing.  Feather alleges that during December 2018, Gordon told Muzii that he had the money to fund the loan.  The Mortgagee agreed to extend the time in which refinancing might take place through April 2, 2019.[2]

From January to March 2019, Gordon and Muzii negotiated terms for a loan.  On March 21, Allegro provided a final draft Loan Commitment.  By March 25, the Loan Commitment was finalized and signed by both parties.  The Loan Commitment was for a $6.9 million loan, $5.5 million of which would be used to pay off the original mortgage, with the remainder to cover various fees and twelve months of prepaid interest.

In the Loan Commitment, Allegro agreed to "provide financing subject to the terms and conditions set forth" therein.[3]  For example, Allegro's commitment to provide the loan

---

[2] In the FAC, Feather alleges that this deadline was April 11, 2019.

[3] Although the Loan Commitment was not attached to the FAC or RAC, it is "integral to" Feather's claims, and its text is thus

was "subject to the negotiation, execution and delivery of definitive Loan and security agreements, mortgages or deeds of trust, notes, and other documentation and customary certificates and legal opinions (collectively, the 'Loan Documents')." Another condition relevant here was that Feather agreed "upon signing of the Loan Commitment to forward Ten Thousand Dollars ($10,000) to Lender's legal counsel, on account of legal fees and costs."

The Loan Commitment also provided that it would "become effective only upon delivery . . . of a signed copy of this Loan Commitment, duly accepted by Borrower, accompanied with the payment to Allegro of a Commitment Fee in the amount of Five Hundred Seventy Five Thousand Dollars ($575,000)." But a later provision of the Loan Commitment, bearing the heading "COMMITMENT FEE MODIFICATION," provided that notwithstanding the requirement to pay the Commitment Fee,

> [A]s consideration for the parties unconditionally and irrevocably waiving all right to trial by jury and the parties agreeing to the Choice of Forum and Limitation of Damages clauses, Lender will accept payment of the Commitment Fee in the following manner:
>
> a) Twenty Thousand Dollars ($20,000) to be paid at the time this Loan Commitment is signed . . . ;
>
> b) Five Hundred Thirty Five Thousand Dollars ($535,000) to be paid at the closing from the Loan

---

properly considered in addressing Allegro's motions to dismiss. Palin v. New York Times Co., 940 F.3d 804, 811 (2d Cir. 2019).

    proceeds or upon Borrower electing not to proceed to a
    Loan closing.

As the above language suggests, the Loan Commitment contained a limitation of damages clause, which provided that

    LENDER SHALL HAVE NO LIABILITY TO BORROWER . . . UNDER
    ANY THEORY OF LAW OR EQUITY FOR ANY AMOUNT IN EXCESS
    OF THE PAID PORTION OF THE COMMITMENT FEE.  BORROWER
    ACKNOWLEDGES THAT THIS LIMITATION OF DAMAGES CLAUSE IS
    REASONABLE.  BORROWER AGREES NOT TO PURSUE ANY CLAIM
    IN EXCESS OF THE ABOVE SUM.

    B.    Allegro Declines to Fund the Loan.

    Feather wired Allegro $15,000 for legal fees.  And as required by the Loan Commitment, Feather paid $20,000 towards the Commitment Fee.  Then, during an April 3, 2019 telephone conversation, Gordon told Muzii that Allegro could not close the transaction by the refinancing deadline.  Gordon said that Allegro lacked the funding necessary to close the transaction and that it might be better for Feather to go back to the Original Lender.

    The Mortgagee agreed to extend Feather's deadline to refinance the loan to April 10.  The Original Lender said it could close in the time available, but offered "take it or leave it" terms that required Feather to pay more in interest and fees than it would have incurred under the Loan Commitment.  Feather accepted these terms and closed a loan with the Original Lender

on April 11.  Feather requested that Allegro refund the fees it had paid, but Allegro did not do so.

## Discussion

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Geffner v. Coca-Cola Co., 928 F.3d 198, 199 (2d Cir. 2019) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Charles v. Orange Cty., 925 F.3d 73, 81 (2d Cir. 2019) (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Empire Merchs., LLC v. Reliable Churchill LLLP, 902 F.3d 132, 139 (2d Cir. 2018) (citation omitted).  The plaintiff must plead enough facts to "nudge[] [its] claims across the line from conceivable to plausible."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

When a party moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P., a court must "constru[e] the complaint liberally, accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor."  Coal. for

Competitive Elec. v. Zibelman, 906 F.3d 41, 48-49 (2d Cir. 2018) (citation omitted). But, "allegations that are conclusory are not entitled to be assumed true." Lynch v. City of New York, 952 F.3d 67, 75 (2d Cir. 2020) (citation omitted).

I.   GBL § 349

Section 349 of the GBL prohibits "[d]eceptive acts or practices in the conduct of any business . . . or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). To state a claim for deceptive practices under Section 349, a plaintiff must plead that:  (1) The defendant engaged in a consumer-oriented act, (2) the consumer-oriented act was misleading in a material way, and (3) the plaintiff consequently suffered injury. Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 500 (2d Cir. 2020); Stutman v. Chem. Bank, 731 N.E.2d 608, 611 (N.Y. 2000).

Conduct is consumer oriented where "the acts or practices have a broader impact on consumers at large." Plavin v. Grp. Health Inc., 146 N.E.3d 1164, 1168 (N.Y. 2020) (citation omitted). By contrast, a "single shot transaction" or "private contract dispute . . . which is unique to the parties" is not consumer-oriented conduct. Id. at *4-5 (citation omitted); see also Euchner-USA, Inc. v. Hartford Cas. Ins. Co., 754 F.3d 136, 143 (2d Cir. 2014). A plaintiff "need not show that the

9

defendant committed the complained-of acts repeatedly -- either to the same plaintiff or to other consumers -- but instead must demonstrate that the acts or practices have a broader impact on consumers at large." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 647 N.E.2d 741, 744 (N.Y. 1995).

Feather has not adequately pleaded consumer-oriented conduct. The facts alleged by Feather describe a single, private negotiation of a multimillion-dollar loan. Feather alleges that Gordon misleadingly said Allegro could close the loan when it in fact lacked the necessary cash to fund the loan by the deadline imposed by Feather's Mortgagee. There is no allegation to support an inference that Allegro's alleged misrepresentation or lack of funding would "have a broader impact on consumers at large." Plavin, 146 N.E.3d at 1168 (citation omitted).[4]

---

[4] The parties dedicate significant briefing to the question of whether Feather has correctly identified Allegro's website or the website of another similarly named entity. But this is all irrelevant, as Feather has not pleaded that it in fact relied on Allegro's website in deciding to enter the loan transaction. To recover under GBL § 349, a plaintiff's alleged injury must be caused by the deceptive conduct. Orlander v. Staples, Inc., 802 F.3d 289, 300-01 (2d Cir. 2015). Here, Feather alleges that it was attracted to Allegro's services through personal relationships. Any statements that Allegro made on its website cannot form the basis of a deceptive practices claim brought by a consumer who did not rely on that website.

Feather asserts that Allegro was running an "advance-fee loan scam," in which a lender makes a phony loan offer conditioned on a borrower paying advance fees, pockets those fees, and then refuses to close the loan.  In support of this assertion, the RAC cites sources generally noting the existence of advance-fee loan scams.[5]  The facts alleged by Feather, however, reflect only a privately negotiated loan between parties connected by a web of personal relationships.  Feather alleges that Feather's financial consultant decided to pursue negotiations with Allegro based on familiarity with its owner.  This is insufficient to state a consumer-protection claim affecting consumers at large.  This analysis applies to Feather's GBL § 349 claims in both the Original Action and the Related Action.

## II. Negligent Misrepresentation

To state a claim for negligent misrepresentation under New York law,[6] a plaintiff must plead that

> (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she

---

[5] See, e.g., Fed. Trade Comm'n, Advance-Fee Loans (Aug. 2012), https://www.consumer.ftc.gov/articles/0078-advance-fee-loans.

[6] The parties' briefing assumes that New York law applies to Feather's common law claims.  Such "implied consent is sufficient to establish choice of law."  Photopaint Techs., LLC v. Smartlens Corp., 335 F.3d 152, 160 n.8 (2d Cir. 2003) (citation omitted).

>      should have known was incorrect; (3) the information
>      supplied in the representation was known by the
>      defendant to be desired by the plaintiff for a serious
>      purpose; (4) the plaintiff intended to rely and act
>      upon it; and (5) the plaintiff reasonably relied on it
>      to his or her detriment.

Hydro Inv'rs, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000) (citation omitted).

To show the requisite special relationship, a plaintiff may plead that the defendant "possess[ed] unique or specialized expertise, or [was] in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation [was] justified." Mandarin Trading Ltd. v. Wildenstein, 944 N.E.2d 1104, 1109 (N.Y. 2011) (citation omitted); see also Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 103 (2d Cir. 2001). A party to a commercial transaction has a duty to speak with care "when the relationship of the parties, arising out of contract or otherwise, is such that in morals and good conscience the one has the right to rely upon the other for information." Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 405 (2d Cir. 2015) (citation omitted). Also, "the alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition." Hydro Inv'rs, 227 F.3d at 20-21 (citation omitted).

12

Here, Feather has failed to adequately plead a special relationship with Allegro. Feather argues that there was a special relationship between it and Allegro because (1) Gordon had a preexisting friendship with Muzii and (2) Feather's lawyer had represented Gordon in other transactions. Feather alternatively argues that Allegro had a duty to disclose that it lacked sufficient funding because it possessed "superior knowledge" concerning its finances. As the New York Court of Appeals has held, "an arm's length borrower-lender relationship does not support a cause of action for negligent misrepresentation. This is true even if there is a long-standing relationship between the customer and a particular bank employee or if the parties are familiar or friendly." Greenberg, Trager & Herbst, LLP v. HSBC Bank USA, 958 N.E.2d 77, 84 (N.Y. 2011) (citation omitted); see also Crawford v. Franklin Credit Mgmt. Corp., 758 F.3d 473, 490 (2d Cir. 2014). That holding forecloses Feather's negligent misrepresentation claims in both the Original Action and the Related Action.[7]

---

[7] Feather also seemingly advances a fraudulent omission theory in its briefing, arguing that because Allegro represented that it had the funds, it was subject to a duty to disclose that it lacked the funds. Insofar as this claim is based solely on the original representation Allegro made that it had sufficient funds, it is duplicative of the fraud claim, which is separately discussed below. Insofar as Feather's theory is that at some later point Allegro discovered it lacked the necessary funds and

III. Fraud or Intentional Misrepresentation

In the Original Action, Feather asserts a claim for "fraud in the inducement," while in the Related Action Feather styles this claim as one for "misrepresentation of a material fact." However labeled, to state such a claim under New York law, a plaintiff must plead that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance."  Wall v. CSX Transp., Inc., 471 F.3d 410, 415-16 (2d Cir. 2006) (citation omitted); see also Ambac Assurance Corp. v. Countrywide Home Loans, Inc., 106 N.E.3d 1176, 1182 (N.Y. 2018).

A plaintiff alleging fraud or mistake must "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally."  Fed. R. Civ. P. 9(b).  In order to plead fraud with particularity a complaint must, "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3)

---

should have more quickly disclosed that fact, Feather pleads no facts to indicate that Allegro knew of its lack of funds prior to April 3, 2019, when it in fact disclosed that it could not go forward with the transaction.

state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 171 (2d Cir. 2015) (citation omitted); see also Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 94 (2d Cir. 2018).

Although "mental states may be pleaded generally, [p]laintiffs must nonetheless allege facts that give rise to a strong inference of fraudulent intent." Loreley Fin., 797 F.3d at 171 (citation omitted). "The requisite strong inference of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006) (citation omitted). To determine if the "strong inference" requirement is met, a court should "consider the complaint in its entirety and take into account plausible opposing inferences." Loreley Fin., 797 F.3d at 177 (citation omitted). An inference of fraudulent intent is sufficiently strong to state a claim only if it is "at least as compelling as any opposing inference one could draw from the facts alleged." Id. (citation omitted).

15

Here, Feather has failed to plead facts that give rise to a strong inference of fraudulent intent.  Feather alleges simply that (1) Gordon represented to Muzii during December 2018 that Allegro had enough funds to close the transaction and (2) Gordon told Feather in April 2019 that Allegro lacked the funds to close by the deadline.  Feather pleads no facts indicating that Gordon knew Allegro lacked the necessary funds at the time he made the alleged December 2018 statement.[8]  The simple fact of later non-performance is insufficient to raise a strong inference that Allegro acted with an intent to defraud.  See Loreley Fin., 797 F.3d at 176 (noting that "speculation and conclusory allegations" are insufficient to plead scienter (citation omitted)).  Feather's fraud and intentional misrepresentation claims must therefore be dismissed in both actions.

IV. Breach of Contract

To state a claim for breach of contract under New York law, a plaintiff must allege "(i) the formation of a contract between

---

[8] Feather alleges that Gordon filed for Chapter 7 bankruptcy in 2009, and that those proceedings closed in November 2018 with Gordon being denied a discharge from his debts.  Feather argues that it was therefore unlikely that Allegro could have sufficient funds to close the loan as of December 2018.  Any relationship between Gordon's personal bankruptcy and Allegro's financial condition is too attenuated to raise a strong inference of scienter.

16

the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp., 830 F.3d 152, 156 (2d Cir. 2016) (citation omitted); see also Palmetto Partners, L.P. v. AJW Qualified Partners, LLC, 921 N.Y.S.2d 260, 264 (N.Y. App. Div. 2011).

Feather has adequately pleaded each element of this claim. The parties agree that the Loan Commitment constitutes a contract. Feather alleges that it performed all its obligations under the Loan Commitment, including the payment of various fees. Allegro allegedly breached the Loan Commitment by (1) failing to hire legal counsel, (2) failing to prepare closing documents, and (3) failing to fund the loan. Feather alleges damages in the form of fees paid to Allegro and excess costs Feather incurred in returning to the Original Lender.[9]

Allegro first asserts that Feather failed to pay the $10,000 towards Allegro's legal counsel, thus breaching its obligation under the Loan Commitment. But Feather has alleged that it paid all required fees, including the legal fees. This

---

[9] In the Original Action, Feather seeks $58,500 in costs it incurred prior to Allegro's withdrawal from the transaction, which includes the $20,000 that Feather paid towards the Commitment Fee. The Related Action version of the breach of contract claim seeks $417,960 in damages, which reflects the increased cost of returning to the Original Lender.

17

is a factual dispute that cannot be resolved on a motion to dismiss. Allegro next argues that there was no clear obligation under the Loan Commitment for it to hire counsel or prepare closing documents. There is no need to construe the Loan Commitment at this time to determine whether it imposed these obligations on Allegro since the FAC adequately pleads that Allegro breached by failing to fund the loan.[10]

Finally, Allegro argues that Feather failed to pay the full $575,000 Commitment Fee, thus breaching its obligations under the Loan Commitment. Feather admits that it only paid $20,000 of the Commitment Fee. But Allegro's argument ignores the provision of the Loan Commitment that modified the Commitment Fee to permit Feather to pay $20,000 towards the Commitment Fee upon signing of the Loan Commitment, with the remaining amount to be paid from the loan amount at closing. Allegro is thus not entitled to dismissal of Feather's breach of contract claim.

---

[10] Defendant advances a cursory argument that it had no duty to fund the loan because the Loan Commitment provided that "Lender may also assign its obligations hereunder to a third party that will own, fund, close and service the Loan." But there is no suggestion in the pleadings that Allegro fulfilled its obligation to fund the loan through an assignment. Accordingly, the clause permitting assignment does not provide a basis for dismissal of Feather's claims.

## Conclusion

Allegro's February 21, 2020 motion to dismiss in the Original Action is granted, except as to Feather's breach of contract claim.  Allegro's June 15, 2020 motion to dismiss the counterclaims filed in the Related Action is granted, except as to Feather's breach of contract counterclaim.

Dated:   New York, New York
         July 14, 2020

_____
DENISE COTE
United States District Judge