UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

OF A FEATHER, LLC,

                    Plaintiff,

          -against-

ALLEGRO CREDIT SERVICES, LLC,

                  Defendant

Index No. 19-cv-9351 (DLC)

---------------------------------------------------------------x

ALLEGRO CREDIT SERVICES, LLC,

               Plaintiff,

         v.

Index No.  20-cv-02622 (DLC)

OF A FEATHER, LLC, JARED STAMELL
and SUSAN STAMELL,

              Defendants.

---------------------------------------------------------------x

**FEATHER REPLY TO ALLEGRO PRETRIAL MEMORANDUM**

I.  Allegro ignores the "Notwithstanding" Phrase in the "Commitment Fee Modification" which Overrides the "Acceptance of Commitment" provision; Feather Did Not Breach the Loan Commitment.

    A.  The "Notwithstanding" Phrase

Allegro wants to interpret the Loan Commitment so that Feather should have paid

$20,000 to (1) prior to when Allegro started its due diligence and (2) again when the Loan

Commitment was signed.   However, normal contract interpretation only supports one $20,000

payment.

1

The only legal principle Allegro addresses in its Pretrial Memorandum of Law (March 1, 2021) is that if a contract is clear and unambiguous, follow the contract.  See Allegro Memo of Law at 5.  Allegro ignores an established drafting practice that when a "notwithstanding any other provision" is used, the provision in "notwithstanding" overrides conflicting provisions.  The Court already addressed the "notwithstanding" phrase in the motion to dismiss.

Because the Commitment Fee Modification begins with a "notwithstanding" phrase, that section replaces the provision in the Acceptance of Commitment section.  The Modification begins: "Notwithstanding the above requirement to pay the Commitment Fee…"   The only requirement was one $20,000 payment which was paid.

The Court of Appeals explains this drafting practice in *CNH Diversified Opportunities Master Account, L.P. v Cleveland Unlimited, Inc.*, 36 NY3d 1, 16 (2020), in overriding provisions conflicting with a provision beginning with "notwithstanding":                :

> When a preposition such as 'notwithstanding any other provision' is included in a contractual provision, that provision overrides any conflicting provisions in the contract (*see Beardslee v. Inflection Energy, LLC,* 25 N.Y.3d 150, 158, 31 N.E.3d 80 (2015); *accord Cisneros v. Alpine Ridge Group,* 508 U.S. 10, 18 (1993) ("the use of ... a 'notwithstanding' clause clearly signals the drafter's intention that the provision of the 'notwithstanding' section override conflicting provisions of any other section")).

The Modification provision is a standalone provision, and the Loan Commitment requires only one $20,000 payment.

B.   Feather did not breach the Loan Commitment.

Gordon does not address the "notwithstanding" phrase in his affidavit.  He claims the right to interpret the Modification provision because he added it.[1]  This is not true because Gordon did not add it.  The Modification provision is from a form loan commitment used at least since 2002.  Gordon had nothing to do with adding this provision.  *See Omni Credit All., Inc. v*

---

[1] Gordon Affidavit ¶ 15

*Kennedy Funding, Inc.*, 2007 WL 4365314, at *1 (D.N.J. 2007), *aff'd,* 371 Fed Appx 252 (3d Cir 2010).[2]

Allegro now argues that the $15,000 for legal costs was not for legal costs because that that would violate the No Oral Modification provision.[3]  However, Gordon required payment of $15,000 for legal costs in an email to Rayano and Stamell on March 20, 2019, "(2) Jared (Stamell) will need to find the $15,000 since we won't go out pocket for attorneys' fees and closing costs."[4]  There are emails about wiring the $15,000 between Feather and Gordon for Allegro.  On March 22, 2019, Stamell emailed, "I need wire instructions for the $15,000 if it is going out today.  What is the plan?"[5]

Feather did not breach the Loan Commitment.  It complied with Allegro's requirement to pay $15,000 for legal fees.

II.  Courts have enforced the Covenant of Good Faith and Fair Dealing in the Loan Commitment Allegro Used and Defined the Conduct which Breaches It.

The loan closing was scheduled for March 27, 2019, but Allegro did not prepare documents to close the loan.  The time was extended on March 29, 2019, for Allegro to put the documents together for a closing by April 10, 2019.  Allegro waited four days before advising that it was walking away.  Feather had advanced and incurred costs of more than $38,500 to Allegro which Allegro kept.

Because Allegro walked away from the loan, Feather was forced to close a more expensive loan from Titan and needed $15,000 to pay Titan's lawyer.  Allegro promised to

---

[2] Ex A, 2002-11-14 Loan Commitment, signed, attached.
[3] Allegro Pretrial Memo of Law at 15-17.
[4] Ex 75 Item 2.
[5] Ex 91;  see also Ex 89, 90 (same).

return the $15,000 paid to Allegro for a lawyer it never retained, but Allegro knew Feather was pressed for money and refused.

When Feather filed a lawsuit to recover money from Allegro in New York courts as the contract with Allegro required, Allegro filed its own case in Delaware which had the purpose of forcing Feather to spend more money where Allegro knew Feather was pressed for money. The case was dismissed because the lawsuit was already in New York.

All this conduct by Allegro which breached the contract between Feather and Allegro for no commercial reason is a violation of the covenant of good faith and fair dealing which Allegro was required to follow.

In *Omni Credit All., Inc. v Kennedy Funding, Inc.*, 2007 WL 4365314, at *6 (DNJ Dec. 12, 2007), *affd,* 371 Fed Appx 252 (3d Cir 2010), held that that the lender and borrower to the same form of Loan Commitment were bound by the covenant of good faith and fair dealing.[6] The court quoted other courts to define bad faith in terms of denying a party the benefits of the contract::

> The covenant of good faith and fair dealing calls for parties to a contract to refrain from doing anything that will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract … a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties.

*Omni Credit All., Inc. at* 2007 WL 4365314, at *7. The Court listed examples of bad faith as: :

> evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

---

[6] See Feather Conclusion of Law Section 4.

In *Omni*, the Court of Appeals specifically stated that a lender's "failure to negotiate a final deal in good faith by (1) merely "deflecting Omni's collateral proposals and rejecting them with little explanation" and (2) declining to "take any reasonable steps to close the loan."
*Omni Credit All., Inc. v Kennedy Funding, Inc.*, 371 Fed Appx 252, 254 (3d Cir 2010).

Allegro refused to take any steps to close the loan even after the date was extended so Allegro had time to close the loan.  Gordon claims, "The only reason Allegro did not close the loan was because Feather failed to make the required payments that were due under the Loan Commitment."[7]  This is a bogus reason.  If Allegro wanted $15,000 more it could have asked. With hundreds of emails exchanged there is not one email asking for an additional $15,000 or $20,000 Commitment Fee.  Rayano who was in constant contact with Gordon was never asked for $15,000 or $20,000.

With time running, on April 3, 2019, Gordon had Allegro walk away from the loan knowing that a foreclosure was pending, and no further extension could be obtained.

On April 3, 2019, Muzii talked to Gordon and reported to Jared Stamell.  Gordon told Muzii that Gordon doubted that he could close in time and Feather should go to Titan Capital ID. LLC ("Titan"), the lender interested in a loan in December 2018.

After talking to Gordon, Muzii offered the loan to Titan on April 3, 2019.  Titan quickly issued a loan commitment to attempt to close by April 10, 2019, which was the deadline.  Titan circulated a loan commitment on April 4, 2019, and it was signed on April 4, 2019, and a $15,000 fee for legal costs was paid.

On April 9, 2019, Muzii sent an email to the Stamells and Rayano repeating what Gordon said in the April 3 conversation:

---

[7] Gordon Affidavit ¶19.

> Due to Dan's last-minute cancellation of the mortgage causing us to return to Titan has caused us to rush to a close in one week. His exact comment to me was that because of the family emergency he doubts that he could close in time. Also, he had no problem and recommended that we return to Titan.[8]

On September 19, 2019, Muzii again in an email wrote what Gordon said:

> He said that they could not make the time frame because of his wife's illness...might be better to go back to titan if you can't get an extension.. not sure of date for working on docs.[9]

Although Muzii does not want to be involved in this dispute, his lawyer recently stated in an email that he would testify under a subpoena:

> I have spoken with Mr. Muzzi and shared with him your requested declaration.  Mr. Muzzi does not wish to be in the middle of the dispute between you and Allegro.
>
> For the purpose of your motion, you do not need his declaration as to the authenticity of the email, as you can declare your receipt of it.  As to the contents of the email, that speaks for itself.  If the court decides to proceed with the trial and there is relevant testimony concerning authenticity, or anything else, which the parties cannot agree to, Mr. Muzzi will be compliant with his obligations of a non-party in receipt of a subpoena.

The evidence is that Allegro walked away on April 3, 2019, for reasons that have nothing to do with the payments Feather made.  Gordon in his deposition testified that Allegro could have closed the loan, wanted to close the loan, but never retained a lawyer or otherwise prepared to close the loan.[10]  Instead knowing Feather's financial weakness took advantage in the conduct stated above.

Allegro violated the good faith and fair dealing required of it.  Further, the limitations on damages and claims in the Loan Commitment do not protect Allegro from the damages it has caused.

---

[8] Ex 221.

[9] Ex 239.

[10] Gordon Deposition 65, 70 ("I very much want to close the loan…")

III. Notwithstanding Allegro claiming that the Titan Loan was a Less Expensive Loan than Allegro,[11] Arithmetic Proves that Titan is Substantially More Expensive.

The Titan Loan Commitment shows that Titan will issue a one-year loan which requires payment of $7,275,000 in one year.[12]  The Titan Promissory Note shows the same payment required.[13]  The Allegro Loan Commitment shows that Allegro would have issued a one-year loan with a payment of $6,912,500.[14]  If the Allegro loan is subtracted from the Titan loan the Titan loan is $362,500.  Damages are more because of costs and interest.  The calculations are below:

<u>Calculation of Damages</u>

| | |
|---|---|
| Titan loan (13.5%) | $7,275,000.00 |
| Allegro loan | ($6,912,500.00) |
| Subtotal | $362,500.00 |
| | |
| Commitment Fee | $20,000.00 |
| Legal | $15,000.00 |
| Appraisal | $3,500.00 |
| Subtotal | $38,500.00 |
| | |
| Total | $401,000.00 |
| | |
| 1 year 13.5% to 4/20 | $54,135.00 |
| Total + interest | $455,135.00 |
| | |
| CPLR 5004 (9%) yearly | $40,962.15 |
| **Total to April 2021** | **$496,097.15** |

---

[11] Allegro Pretrial Memo at 19-20.
[12] Ex 235.
[13] Ex 235.
[14] Ex 234

IV.     CONCLUSION

The Court should grant a judgment in favor of Feather granting judgment on breach of contract and award damages in the amount of $496,097.15 and interest and dismiss the claims and complaint of Allegro.

Dated: March 8, 2021

/s/ Jared Stamell
Jared Stamell
Stamell & Schager, LLP
260 Madison Ave, 16th FL
New York, NY 10016
(917) 714-9027
stamell@ssnylaw.com
*Attorney for Of a Feather, LLC,*
*Jared and Susan Stamell*

**EXHIBIT "A"**

# KENNEDY FUNDING, INC.

TWO UNIVERSITY PLAZA
SUITE 402
HACKENSACK, NEW JERSEY 07601
TEL. (201) 342-8500
FAX: (201) 342-8373
kfi@worldnet.att.net

November 13, 2002

Omni Credit Alliance, Inc.
PO Box 11742
Atlanta, Georgia 30355
Attn: Mr. Kenneth Reaves

**Re:    Financing Request $25,000,000**

Dear Mr. Reaves:

We are pleased to advise you of our commitment to provide financing. This commitment supersedes all previous communications and correspondence without limitation. The terms of this Loan Commitment are as follows:

| | |
|---|---|
| **LENDER:** | Kennedy Funding, Inc. (KFI), or any other Lender designated by KFI, reserves the right to assign or sell participations in all or part of the Loan (the "Loan") described hereunder. |
| **BORROWER:** | Omni Credit Alliance, Inc.<br>PO Box 11742<br>Atlanta, Georgia 30355 |
| **GUARANTORS:** | Kenneth Reaves     SS# 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<br>3481 Oak Run Drive<br>Lithonia, Georgia 30038 |
| **COLLATERAL/<br>PROJECT:** | An irrevocable, unconditional, and transferable Guarantee from an company having a Best rating of A-, X or better or a Standard & Poor's rating of A or better. ("Guarantee"). The Guarantee must guarantee payment of the Loan principal, interest, and default interest, late fees, and legal fees in the event of default. The issuer of the Guarantee and the Guarantee itself must be in form and substance acceptable to KFI and its counsel in their sole discretion. KFI must be the beneficiary of the Guarantee. |
| **AMOUNT<br>OF LOAN:** | A Loan of Twenty Five Million Dollars ($25,000,000) including the FEE, fees and costs in accordance with Schedule A attached. |

2

Omni Credit Alliance, Inc.
Loan Commitment
November 13, 2002

**TERMS:**             The term of the Loan shall be one and one half (1 1/2) years from the date of closing. The closing shall take place not later than December 6, 2002, <u>time of the essence</u>.

**INTEREST:**        **A.** The interest rate for the term of the Loan shall be a fixed rate of Fifteen Percent (15%) paid monthly at One and One Quarter Percent (1 1/4%) per month. Notwithstanding this, Borrower may at any time elect to prepay the interest for the balance of the term of the Loan. Upon Borrower doing do, the interest rate for the balance of the term would be reduced to Twelve Percent (12%) per annum.

                       **B.** Monthly payments of interest only on the unpaid balance shall be due on the first day of each month for the prior month's interest until the maturity date, at which time the entire balance of principal and accrued and unpaid interest thereon shall be due and payable in full.

                       **C.** Monthly payments will be computed on a 30 day month and a 360 day year.

                       **D.** Interest from the date of closing to the end of the month in which the closing takes place shall be paid at the time of the closing.

**FEE:**              Four Percent (4%) of the Loan amount.

**REPAYMENT:**     The Loan may be prepaid in full or in part without penalty except there shall be no refund for the FEE, points, fees and the like. The unused portion of any Monthly Prepaid Interest is refundable.

**LEGAL MATTERS:**   **The interests of the Borrower and Lender are or may be different and may conflict, and the Lender's attorney represents only the Lender and not the Borrower and the Borrower is, therefore, advised to employ an attorney of the Borrower's choice licensed to practice in the State of New Jersey to represent the interests of the Borrower.**

                       The Borrower shall be required to pay to the Lender's attorney, reasonable legal fees and expenses of Lender's attorney for services provided to Lender in connection with this transaction. The legal fees of Lender's attorney shall be calculated on a time spent basis, based upon the standard hourly rates of Lender's attorney generally charged to clients of that firm for similar matters. The legal fee of Lender's attorney which Borrower will be required to pay hereunder shall be actual and reasonable which shall not exceed Twenty Thousand Dollars ($20,000) without prior written approval by Borrower.

3

Omni Credit Alliance, Inc.
Loan Commitment
November 13, 2002

Borrower agrees that upon acceptance of the Loan amount and the scheduling of a Loan closing, to forward a check in the amount of Five Thousand Dollars ($5,000) to counsel for KFI on account of legal fees. The acceptance of any such amount by KFI or its attorney shall not be construed as evidence that the Borrower has fulfilled all of its obligations under the terms of this commitment.

**DOCUMENTATION:** KFI's commitment to provide the Loan is subject to the negotiation, execution and delivery of definitive Loan and security agreements or deeds of trust, notes, and other documentation and customary certificates and legal opinions (collectively, the "Loan Documents"), which in each case will be in form, substance and enforceability satisfactory to KFI in its sole discretion. The Loan Documents shall contain conditions precedent, representations and warranties, covenants, events of default and other terms and conditions consistent with the terms hereof as shall be satisfactory to KFI in its sole discretion and deemed appropriate by KFI for a transaction of the type contemplated herein.

**ACCEPTANCE OF COMMITMENT:** The commitment and all of its terms and conditions will become effective only upon delivery to this office of a signed copy of this commitment, duly accepted by the Borrower, accompanied with the commitment fee in the amount of Seven Hundred Fifty Thousand Dollars ($750,000) which is non-refundable and earned for, among other things, the commitment to provide funds.

Said fee is not refundable under any circumstances, except as agreed to herein.

Notwithstanding anything to the contrary contained in this commitment, the Borrower agrees that the basis for the Loan is the Borrower providing an irrevocable, unconditional Guarantee acceptable to KFI and its counsel in their sole discretion. The Company issuing the Guarantee must have a Standard & Poor's rating of A or better or a Best rating of A-X or better and be acceptable to KFI in its sole discretion. KFI must be the beneficiary of the Guarantee.

This letter will become a commitment once signed by all parties and returned with the Seven Hundred Fifty Thousand Dollars ($750,000) as outlined above. This commitment will expire December 6, 2002, <u>time of the essence</u>. KFI shall have no obligation with respect to the Loan unless and until this commitment letter is fully executed and received by KFI along with the commitment fee.

**RETURN OF COMMITMENT FEE:**

KFI intends to bring participants into this transaction. If KFI is unable to do so or if KFI does not perform its obligations under the terms of this commitment for whatever reason, KFI shall only be obligated to refund all fees previously paid to

com/Omni.Reaves



Omni Credit Alliance, Inc.
Loan Commitment
November 13, 2002

4

KFI by Borrower pursuant to this commitment. SAID REFUND SHALL BE THE TOTAL EXTENT OF ANY LIABILITY OR OBLIGATION ON THE PART OF KFI UNDER ANY CIRCUMSTANCE. There will be no refund if Borrower does not accept the loan offer made by KFI pursuant to this commitment or Borrower has not complied with all the conditions of this commitment.

**OTHER:**

**A.** KFI hereby acknowledges receipt of Ten Thousand Dollars ($10,000) which is non-refundable, except as specifically agreed to herein for the preparation of this commitment.

**B. WARNING:**
The Borrower has asked KFI to accept Collateral in a form other than real estate. The Collateral must be provided in the form as described herein.

In the event the Collateral offered by the Borrower is not as described herein, such Collateral may be rejected by KFI. In such case, if substitute collateral acceptable to KFI is not proffered, the conditions of the commitment will not be satisfied, and the Borrower will lose the deposit monies and other fees which have been paid.

**EXPENSES:**

Borrower agrees that the Loan shall be without cost to KFI. Borrower assumes liability for and will pay all costs and expenses required to satisfy the conditions hereof and the making of the Loan. Such costs and expenses shall be paid at the Loan closing, or upon demand if the Loan does not close or if this commitment is terminated. Such obligation shall survive termination.

**GOVERNING LAW, ETC.**

This commitment may be executed in counterparts which, taken together, shall constitute one original. This commitment is for the benefit of the Borrower only and may not be assigned except upon the prior written consent of KFI, which consent may be withheld for any reason or no reason. No party other than Borrower or a permitted assignee may rely upon the terms and conditions of this commitment. This commitment will be governed by and construed in accordance with the laws of the State of New Jersey without regard to the principles of conflicts of laws thereof.

**WAIVER:**

No failure on the part of KFI to exercise and no delay in exercising any rights under the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise by KFI of any right under the Loan Documents preclude any further exercise thereof, or the exercise of any other right. Each and every right or remedy granted under the Loan Documents or under any document delivered

com/Omni.Reaves



Omni Credit Alliance, Inc.
Loan Commitment
November 13, 2002

5

thereunder or in connection therewith or allowed to KFI in law or equity shall be deemed cumulative and may be exercised from time to time.

This Commitment is executed by an individual strictly in his capacity as a representative of the Lender. By the acceptance of this Commitment, Borrower agrees that no representative, member, partner, shareholder, employee or agent of the Lender shall be personally liable for the payment of any claim or the performance of any obligations hereunder.

**LIMITATION OF DAMAGES:** **KFI SHALL HAVE NO LIABILITY TO BORROWER, OR ANY OTHER ENTITY OR PERSON, UNDER ANY THEORY OF LAW OR EQUITY FOR ANY AMOUNT IN EXCESS OF THE PAID PORTION OF THE COMMITMENT FEE. BORROWER ACKNOWLEDGES THAT THIS LIMITATION OF DAMAGES CLAUSE IS REASONABLE. BORROWER AGREES NOT TO PURSUE ANY CLAIM IN EXCESS OF THE ABOVE SUM.**

**WAIVER OF TRIAL BY JURY:** **BORROWER AND LENDER EACH HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY SUIT, COUNTERCLAIM, OR CROSS-CLAIM ARISING IN CONNECTION WITH, OUT OF, OR OTHERWISE RELATING TO THIS COMMITMENT, THE OTHER LOAN DOCUMENTS, THE OBLIGATION, THE COLLATERAL, OR ANY RELATED TRANSACTION.**

**MISCELLANEOUS:** **BORROWER UNDERSTANDS THAT KFI CANNOT AND WOULD NOT ENTER INTO THIS COMMITMENT WITHOUT BORROWER'S AGREEMENT TO THE LIMITATION OF DAMAGES, CHOICE OF FORUM AND WAIVER OF TRIAL BY JURY CLAUSES CONTAINED HEREIN.**

**COMMITMENT FEE MODIFICATION:** **Notwithstanding the above requirement to pay Seven Hundred Fifty Thousand Dollars ($750,000) at the signing of the commitment, as consideration for the parties unconditionally and irrevocably waiving all right to trial by jury and the parties agreeing to the Choice of Forum and Limitation of Damages clauses, KFI will accept payment of the Seven Hundred Fifty Thousand Dollars ($750,000) in the following manner:**

**a)** **Two Hundred Fifty Thousand Dollars ($250,000) to be paid at the time this commitment is signed, prior to our due diligence, which**

com/Omni.Reaves



Omni Credit Alliance, Inc.
Loan Commitment
November 13, 2002

6

signing will be no later than November 14, 2002, **time of the essence;**

b) **Five Hundred Thousand Dollars ($500,000) to be paid at the closing or upon Borrower electing not to proceed to a Loan closing. In addition, any default by the Borrower under this commitment, or other failure of Borrower to comply with this commitment, or misrepresentation by Borrower of any fact or state of facts to KFI either in connection with this commitment or otherwise, or any material adverse change of any type shall not relieve Borrower of its obligation to pay such amount to KFI.**

Borrower acknowledges that Schedule "B" annexed hereto represents conditions of the Loan commitment required by Lender and that this document would not be executed by Lender without Borrower's agreement thereto.

This document is an arms length and negotiated agreement. It shall be construed without any regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted.

Sincerely,

KENNEDY FUNDING, INC.

BY: _Jeffrey Wolfer (app)_
Jeffrey Wolfer, President

DATE: _11/14/02_

COMMITMENT ACCEPTED

OMNI CREDIT ALLIANCE, INC.

BY: _____
Kenneth Reaves, Chairman/CEO

_____
Kenneth Reaves, Individually and as Guarantor

DATE: _November 14, 2002_

com/Omni.Reaves

Omni Credit Alliance, Inc.
Loan Commitment
November 13, 2002

7

## SCHEDULE "A"

LOAN AMOUNT $25,000,000

### USE OF PROCEEDS

FEE $1,000,000
(Non-Refundable except as agreed to herein)

MONTHLY PREPAID INTEREST
(Refundable if unused) [1 month @ $250,000 per month]] $ 250,000

CLOSING COSTS UNKNOWN

BALANCE OF COMMITMENT FEE $ 500,000



Omni Credit Alliance, Inc.
Loan Commitment
November 13, 2002

8

## SCHEDULE "B"

These General Conditions are part of the attached commitment and deemed a part hereof as if set forth therein.

1.   **Survey:** N/A

2.   **Insurance:** N/A

3.   **Title:** N/A

4.   **Flood Insurance:** N/A

5.   **Easements:** N/A

6.   **Additional Collateral:** As additional Collateral Borrower agrees to allow Lender to lien all inventory, machinery, equipment, accounts receivable and all other assets owned by Borrower.

7.   **Approval of Lender's Counsel:** The form and substance of each and every document evidencing the Loan and the security thereof or incident thereto, must be satisfactory to and approved by Counsel to the Lender in its sole discretion.

8.   **Approval of Borrower's Counsel, Etc.:** Borrower acknowledges that it has consulted with counsel of its choice and with such other experts and advisors as it deemed necessary in connection with the negotiation, execution, and delivery of this Commitment and Borrower acknowledges that it will consult with counsel of its choice and with such other experts and advisors as it deems necessary in connection with the negotiation, execution and delivery of the other Loan Documents. This Commitment and the other Loan Documents shall be construed without regard to any presumption or rule requiring that they be construed against the party causing them, or any part of them, to be drafted.

com/Omni.Reaves



9

Omni Credit Alliance, Inc.
Loan Commitment
November 13, 2002

9. **Representations and Warranties of Borrower and Guarantor:**  Customary for transactions of this type, including, but not limited to, the following:

(a)  Neither the Loan Documents nor the performance by Borrower of its obligations thereunder violate any provisions of law, of Borrower's partnership agreement, corporate by-laws, or of any agreement which is binding upon Borrower or the Guarantors. No action or permission by any governmental commission, bureau or agency is required in connection with the execution or the performance of the Loan Documents by Borrower, and Borrower is not subject to filing, reporting or like requirements of any governmental commission, bureau or agency charged with control or supervision of environmental concern.

(b)  All financial information furnished or disclosed to KFI by Borrower and Guarantors touching upon the financial condition of any of them is true and correct as of the date furnished, and there has been no omission of any material fact relating thereto, and there has been no material adverse change in the financial condition, operations or business of any of them since the date of such financial information.

(c)  Borrower or Guarantors is not in default in the performance, observance or fulfillment of any of the obligations or conditions contained in any agreement or instrument to which it is a party, or with respect to any evidence of indebtedness or obligation for borrowed money which affects in any way the Collateral, nor does any condition exist which, upon the lapse of time or giving of notice, or both, would constitute an event of default under, or grounds for termination of, any such agreement or instrument.

(d)  No actions, suits or proceedings at law or in equity are pending or, to the best of Borrower's or Guarantor's knowledge, threatened, in any court or before any federal, state, municipal or governmental department, commission, board, bureau, agency or instrumentality against or affecting Borrower, the Guarantors, or any of its properties or rights which, if adversely determined would materially adversely affect the financial condition of Borrower or Guarantors or materially impair the right of either to carry on its business substantially as now conducted, nor is either in default with respect to any judgement, writ, injunction, decree, rule or regulation of any court or federal, state, municipal or governmental department, commission, board, bureau, agency or instrumentality.

com/Omni.Reaves

Omni Credit Alliance, Inc.
Loan Commitment
November 13, 2002

10

10. **Miscellaneous:** Prior to the closing of the Loan and disbursement of funds, in each instance the Borrower must comply with the following:

a) The Borrower shall certify or supply other evidence satisfactory to the Lender that the Borrower is not a party to any existing or pending or threatened litigation, unless specifically noted herein.

(b) During the term of the Loan, there shall be no additional financing nor any transfer of title, not contemplated in the Loan Documents without the prior written approval of the Lender which Lender will not unreasonably withhold.

(c) Execution by the Borrower of such Loan Documents including, but not limited to, a note, satisfactory in form and substance to the Lender and its Counsel, including a prohibition against the transfer of title of any of the Collateral not contemplated in the Loan Documents, and if the Borrower is a corporation or partnership, a change in the management or controlling interest in the Borrower. Borrower may prepay the Lender at any time, in whole or in part, without penalty except for all of the FEE which is considered earned at the time of closing.

(d) This commitment is subject to the accuracy of all information, representations, exhibits and other materials submitted with or in support of the Loan request and there must be no adverse change in the set of facts prior to the disbursements of funds or during the term of the Loan. This commitment may be terminated by KFI and the Commitment Fee retained and earned by KFI in the event of the following:

(i) If the Borrower shall fail to comply with any of the terms or conditions hereof.

(ii) In the event of a sale, conveyance or other disposition of any of the Collateral.

(iii) In the event of a materially adverse change in the financial condition of the Borrower or any Guarantor.

(iv) Any fraudulent material misrepresentation or any omission or concealment by the Borrower or any Guarantor of any material fact.

(e) In the event of any default during the term of this Commitment, KFI may, at its option, require immediate payment of the balance of the Commitment Fee and KFI may terminate the Commitment and retain the paid portion of the Commitment Fee.

com/Omni.Reaves

Omni Credit Alliance, Inc.
Loan Commitment
November 13, 2002

(f)     The Borrower has the obligation to disclose all material facts, past and present, related to the Borrower, Guarantors, the Collateral, the transaction, etc.

(g)     The Borrower specifically acknowledges and agrees that KFI and/or Lender rely on counsel opinion letters relating to, among other items, usury. This commitment is subject to the express condition that at no time will the Borrower be obligated or required to pay interest at a rate which could subject KFI and/or Lender to either civil or criminal liability as a result of being in excess of the maximum rate which the Borrower is permitted by law to contract or agree to pay. If, by the terms of this commitment or the Loan Documents the Borrower is at any time required or obligated to pay interest at a rate in excess of such maximum rate, the rate of interest shall be deemed to be immediately reduced to such maximum rate and the portion, if any, of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance.

11.     **Validity of Loan:** The Loan and the closing thereof shall in all respects be legal and not violate any applicable law or other requirements of any governmental authority. The Borrower will submit to the Lender at closing a current written opinion by the Borrower's legal Counsel, satisfactory to Lender, to the effect, among other things, that all Loan Documents are valid and binding upon the Borrower and are enforceable in accordance with their terms and are legal and do not violate any local, state or federal laws including, but not limited to, all usury laws. Once the Loan is closed and funded by the Lender, the Loan shall be governed and construed pursuant to the laws of the State of New Jersey. Borrower understands that KFI has entered into this Commitment expecting to receive a return on the Loan as set forth in this Loan Commitment. In the event that the jurisdiction in which the Collateral is located and/or from which payment is made requires the payment of a tax, assessment, or other charges in connection with the Loan by Lender, Borrower will be responsible for the payment of such tax, assessment or charge and shall reimburse Lender for any payment required to be made by the Lender.

12.     **Governing Law:** This Commitment and the other Loan Documents), shall be governed by and construed in accordance with the internal substantive laws of the State of New Jersey, without regard to the choice of law principles of such state.

13.     **Usury:** It is expressly understood and acknowledged by the Borrower that KFI may not be familiar with the usury statutes in the Collateral's jurisdiction and relies on counsel opinions delivered at closing. This commitment is subject to the express condition that at no time shall the Borrower be obligated or required to pay interest at a rate which could subject KFI or the Co-Lenders to either civil or criminal liability as a result of being in excess of the maximum rate which the Borrower is permitted by law to contract or agree to pay. If by the terms of this commitment or the note the Borrower is at any time required or obligated to pay interest at a rate in excess of such maximum rate, the rate of



12

Omni Credit Alliance, Inc.
Loan Commitment
November 13, 2002

interest hereunder and/or under the note shall be deemed to be immediately reduced to such maximum rate and interest payable shall be computed at such maximum rate and the portion of all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of principal balance or, if the Loan has not closed shall be void, and if KFI deems it a hardship to close the Loan under the usury statutes, all fees paid to KFI shall be refunded and this commitment shall be null and void.

14. **Choice of Forum:** Borrower consents to the jurisdiction of any state or federal court sitting in the State of New Jersey for adjudication of any dispute between the Borrower and Guarantor(s), their agents, servants and/or employees and KFI under any theory of law in connection with, out of, or otherwise relating to this Commitment and any related transactions and that venue shall be proper in any such court to the exclusion of the courts in any other state or country. The Borrower further agrees that such designated forum is proper and convenient.

15. **WAIVER OF TRIAL BY JURY: Borrower and Lender each hereby unconditionally and irrevocably waive any and all right to trial by jury in any suit, counterclaim, or cross-claim arising in connection with, out of, or otherwise relating to this Commitment, the other Loan Documents, the Obligation, the Collateral, or any related transaction.**

16. **No Oral Modifications:** Notwithstanding any course of dealing between the parties, no amendment, modification, recision, waiver, or release of any provision of this Commitment shall be effective unless the same shall be in writing and signed by the Borrower and Lender.

17. **Complete Agreement:** This Commitment, together with the other Loan Documents, constitutes the entire agreement and understanding among the parties relating to the subject matter of this Loan, and supersedes all prior proposals, negotiations, agreements, and understanding relating to such subject matter. In entering into this agreement, Borrower acknowledges that it is relying on no statement, representation or agent of the Lender, except for the agreements of Lender set forth herein.

18. **Survival of Commitment:** Borrower and Lender hereby acknowledge and agree that this commitment shall not survive closing. Furthermore, notwithstanding the provisions of paragraph 16 above, the parties specifically acknowledge and agree that the terms and conditions of this Loan may be modified by mutual agreement at any time up to and including the date of closing and that any such modifications shall be incorporated directly into the Loan Documents without the need to amend this Commitment.



com/Omni.Reaves



Omni Credit Alliance, Inc.
Loan Commitment
November 13, 2002

13

19. **Execution.** This Loan Commitment may be executed in any number of counterparts, each in which shall be considered an original. Delivery of an executed copy by one party to the other, via facsimile, shall constitute a valid delivery.

The undersigned does hereby accept this Commitment and does hereby agree to keep and perform each and every item and condition herein before set forth and do acknowledge that the performance of such terms and conditions are obligations of the undersigned. The attorney for the Borrower has reviewed this commitment and has explained all of its terms and ramifications to the Borrower and the Guarantor.

**ACCEPTED:**

OMNI CREDIT ALLIANCE, INC.

BY: _____
Kenneth Reaves, Chairman/CEO

_____
Kenneth Reaves, Individually and as Guarantor

DATE: November 14, 2002

com/Omni.Reaves